La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
El señor Pagán Medina presentó un recurso extraordi-nario de hábeas corpus en el Tribunal de Primera Instan-cia por entender que estuvo detenido preventivamente y privado de su libertad en exceso del término máximo de seis meses que dispone nuestra Constitución. Tras la nega-tiva del foro de instancia y del Tribunal de Apelaciones de conceder lo solicitado, acude ante nosotros para que orde-nemos su excarcelación. Su petición nos permite interpre-tar el “lacónico mensaje’(1) de la cláusula constitucional y expresamos en tomo al cómputo de seis meses. Resolve-mos que, una vez se determina judicialmente que un im-putado o acusado de delito no es procesable al amparo de la *562 Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y se ordena su reclusión para tratamiento, tan sólo se puede excluir del cómputo del término máximo de detención pre-ventiva el tiempo durante el cual éste estuvo efectiva-mente en una institución adecuada para su tratamiento.
i — t
El 26 de abril de 2008 el señor Pagán Medina fue arres-tado por violación a los Artículos 122 y 208(b) del Código Penal y al Artículo 5.05 de la Ley de Armas. Fue conducido ante un magistrado, quien determinó que hubo causa probable para su arresto y le impuso una fianza de cinco mil dólares. El señor Pagán Medina no prestó la fianza y per-maneció detenido preventivamente desde entonces. Poste-riormente, el 12 de mayo de 2008, a solicitud de la defensa, el tribunal paralizó los procedimientos y ordenó una eva-luación psiquiátrica del imputado, a tenor con la Regla 240 de Procedimiento Criminal, supra, para determinar si el señor Pagán Medina estaba capacitado para ser procesado criminalmente por los cargos en su contra.
La vista se celebró el 20 de agosto de 2008. Compareció el psiquiatra del Estado, el Dr. Rafael Cabrero Aguilar, quien testificó bajo juramento que evaluó al señor Pagán Medina y que, en su opinión, el imputado no reunía los criterios para ser procesado. El tribunal acogió la recomen-dación del perito médico y determinó que el imputado no se encontraba procesable. Así pues, ordenó el traslado del se-ñor Pagán Medina al Hospital de Psiquiatría Forense de Río Piedras para que recibiera tratamiento.
El 17 de septiembre de 2008 se celebró otra vista, a la cual compareció, nuevamente, el Dr. Rafael Cabrero Aguilar. El perito testificó que el imputado estaba capaci-tado para comprender el proceso en su contra y ser some-tido ajuicio. Así lo determinó el tribunal, por lo cual ordenó el traslado del señor Pagán Medina a la institución penal y la continuación de los procedimientos.
*563 El 12 de diciembre de 2008 el señor Pagán Medina pre-sentó una petición de hábeas corpus ante el Tribunal de Primera Instancia. Alegó que se le había confinado, en ca-lidad de sumariado, en exceso de seis meses sin habérsele celebrado juicio y, a tono con la limitación constitucional, reclamó su excarcelación. El 17 de diciembre de 2008 el Tribunal de Primera Instancia declaró “sin lugar” el reme-dio solicitado con las expresiones siguientes: “no ha trans-currido el término de detención preventiva provista [sic] en ley, (excluyendo el tiempo transcurrido en evaluación al amparo de la Regla 240 de Procedimiento Criminal [)].”
El 8 de enero de 2009, mediante una petición de certio-rari, el señor Pagán Medina acudió al Tribunal de Apelaciones. Adujo que el Tribunal de Primera Instancia había errado al resolver que el término de detención pre-ventiva se había interrumpido el 12 de mayo de 2008, cuando el imputado solicitó la celebración de una vista para dilucidar su capacidad mental de acuerdo con la Re-gla 240 de Procedimiento Criminal. El señor Pagán Medina alegó que lo que procedía para calcular la duración de su confinamiento y, por ende, la interrupción de su deten-ción preventiva, era excluir solamente los días durante los cuales estuvo recluido en el hospital psiquiátrico. Anejó una certificación del Departamento de Corrección en la cual se relacionan las fechas en que estuvo ingresado en la institución penal de Bayamón.(2) Por lo tanto, argüyó que habían transcurrido más de seis meses contados desde el *564 27 de abril de 2008, cuando ingresó a la institución penal, hasta la fecha de su solicitud de excarcelación el 12 de diciembre de ese año.
En cumplimiento de la orden para mostrar causa dic-tada por el Tribunal de Apelaciones, el 8 de enero de 2009 el Procurador General alegó que el término de detención preventiva no debe incluir el período desde que el tribunal tiene una base razonable para creer que el acusado está mentalmente incapacitado hasta que determina que el im-putado está finalmente capacitado para ser sometido a jui-cio, puesto que los procedimientos contra el imputado de delito quedan interrumpidos y el Ministerio Público está impedido de continuar la acción penal. Por lo tanto, según el Procurador General, durante los 128 días desde la para-lización de los procedimientos cuando el señor Pagán Medina presentó su moción al amparo de la Regla 240 de Pro-cedimiento Criminal, supra, hasta que el tribunal determinó nuevamente que éste era procesable, no estaba pendiente la celebración del juicio y el imputado no estaba detenido preventivamente. Así, pues, concluyó que “el tér-mino de detención preventiva no puede transcurrir contra el Ministerio Público mientras éste se encuentre legal y constitucionalmente vedado de proseguir con el procesa-miento criminal del acusado”.
El 16 de enero de 2009 el Tribunal de Apelaciones de-negó el auto de certiorari. El foro apelativo acogió la inter-pretación del Procurador General y resolvió que al compu-tar el término de seis meses se excluyó correctamente el período durante el cual se dilucidaba la solicitud de la de-fensa al amparo de la Regla 240 de Procedimiento Criminal, supra, es decir, aun antes que se ordenara la reclusión, ya que desde que se presentó la solicitud el Ministerio Pú-blico quedó vedado de proseguir la acción criminal contra el acusado.
Oportunamente, el 26 de enero de 2009 el señor Pagán Medina nos solicitó que revocáramos la resolución del foro apelativo. El 28 de enero de 2009 ordenamos a la Procura- *565 dora General mostrar causa por la cual no debiéramos hacerlo. El 4 de febrero de 2009 la Procuradora General compareció e invocó los mismos fundamentos que había presentado ante el Tribunal de Apelaciones, avalando la decisión recurrida y la determinación del tribunal de instancia. Tras la comparecencia de ambas partes, expedi-mos el recurso de certiorari y procedemos a resolver.
II
La Regla 239 de Procedimiento Criminal, en lo pertinente, dispone que “[njinguna persona será juzgada ... por un delito mientras esté mentalmente incapacitada”. 34 L.P.R.A. Ap. II. Por tal razón, si el tribunal tuviera base razonable para creer que el imputado de delito está mentalmente incapacitado, deberá suspender inmediatamente los procedimientos y señalar una vista para dilucidar su capacidad de ser sometido a juicio. 34 L.P.R.A. Ap. II, R. 240(a). Véase Pueblo v. Castillo Torres, 107 D.P.R. 551, 555 (1978).
La Regla 240 de Procedimiento Criminal, supra, concede al tribunal la discreción para determinar si hay base razonable para poner en duda la capacidad mental del acusado. Véase Pueblo v. Santiago Torres, 154 D.P.R. 291, 301 (2001). Si se determinara que el imputado no es procesable, el tribunal deberá ordenar su traslado a una institución adecuada para su tratamiento. 34 L.P.R.A. Ap. II, R. 240(b); Pueblo v. Santiago Torres, supra, pág. 301; Pueblo v. Rodríguez Galarza, 117 D.P.R. 455, 457 (1986).
El propósito de estas medidas procesales es “impedir que se someta a juicio a un reo que es incapaz de comprender la naturaleza y propósito de los procedimientos que contra él se siguen, y como consecuencia, de defenderse adecuadamente”. Pueblo v. Cruz Román, 84 D.P.R. *566 451, 457-458 (1962).(3) De esta forma, consagran un prin-cipio mayor de debido proceso de ley para asegurar un jui-cio justo, en la medida en que “[l]a eficaz garantía del de-recho a un juicio justo e imparcial exige del acusado un estado específico de capacidad mental como criterio para medir la capacidad procesal”. O.E. Resumil, Derecho Pro-cesal Penal, Orford, Equity Publishing Company, 1990, T. 1, pág. 101.(4) Véase, también, E.L. Chiesa Aponte, De-recho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, Vol. III, 1993, pág. 349.
La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, en su Sección 11, establece unos derechos primordiales para los procedimientos penales. Específicamente dispone que:
En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abo-gado, y a gozar de la presunción de inocencia.
Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.
*567 La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas. (Enfasis suplido.) Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, págs. 343-344.
Todos estos derechos están entrelazados y encuentran su razón de ser en el principio constitucional básico de la presunción de inocencia. Pueblo v. Colón, 161 D.P.R. 254 (2004); Pueblo v. Martínez Hernández, 158 D.P.R. 388 (2003). En Pueblo v. Colón, al referirnos a la detención pre-ventiva y al derecho de la fianza, explicamos que “[e]llo es así toda vez que sería un contrasentido mantener encarce-lada a una persona que se considera inocente, cuya culpa-bilidad corresponde al Ministerio Público probar, y que eventualmente puede ser exonerada”. íd., págs. 259-260. Hace más de medio siglo y a estos efectos, el Juez Negrón Fernández expresó lo siguiente:
El derecho a la libertad provisional bajo fianza, el derecho a que éstas no sean excesivas, y el derecho a salir en libertad transcurridos seis meses de encarcelación por defecto de fianza en espera de juicio, son derechos correlativos, dirigidos todos a salvaguardar el superior derecho —constante también como garantía constitucional— de la presunción de inocencia.
Fue indudablemente inspirada en un propósito de fundamental política pública que la Convención Constituyente pre-ceptuó que la prisión preventiva antes del juicio no excedería de 6 meses. La Convención obviamente estimó que mi período mayor de detención en espera de juicio, en defecto de fianza, constituía un gravamen sobre el ciudadano que, presumién-dose inocente hasta el momento de recaer convicción, era res-tringido por el Estado —en el ejercicio de su poder de custo-dia— en el disfrute de su libertad personal, con el solo propósito de hacerle comparecer a juicio en su día. Consideró preferible rendir la custodia de un acusado después de ese período, antes que hacer vulnerable la integridad de su dere-cho a la presunción de inocencia... . Sánchez v. González, 78 D.P.R. 849, 856-857 (1955), opinión del Juez Asociado Señor Negrón Fernández.
La presunción de inocencia es el pilar del sistema penal puertorriqueño del cual surgen derechos corolarios, *568 como la garantía al acusado que no permanecerá detenido preventivamente, en espera del juicio, en exceso de seis meses y el derecho a la libertad bajo fianza. Véase Resu-mil, op. cit., pág. 149. La Regla 219 de Procedimiento Criminal establece que en defecto de fianza, el imputado per-manecerá bajo la custodia del Estado como garantía para su comparecencia al juicio y a otros eventos procesales. 34 L.P.R.A. Ap. II.(5) Véanse: J.E. Fontanet Maldonado, El proceso penal de Puerto Rico, San Juan, Editorial InterJu-ris, 2008, T.l, pág. 256; I. Betancourt y Lebrón, Los Dere-chos del Acusado, [ed. de autor], 1975, pág. 214. No obs-tante, la cláusula de la detención preventiva es un límite constitucional al poder de custodia del Estado, pues el im-putado se presume inocente y no debe ser castigado en anticipación de un delito por el cual aún no ha sido juzgado. Pueblo v. Martínez Torres, 126 D.P.R. 561 (1990); opinión del Juez Negrón Fernández en Sánchez v. González, supra, pág. 854; Resumil, op. cit., pág. 150.
El alcance del derecho constitucional a no ser encarcelado preventivamente en espera de juicio por más de seis meses fue discutido en la Convención Constituyente. En estos debates se manifiesta claramente que este derecho está íntimamente relacionado al derecho constitucional a juicio rápido y, por lo tanto, a los términos estatutarios de enjuiciamiento rápido. No obstante, el derecho a no ser detenido preventivamente por más de seis meses responde a consideraciones adicionales de política pública, *569 particularmente evitar el abuso de poder, las cuales asegu-ran una mejor administración de la justicia.(6)
En Sánchez v. González, supra, ordenamos la ex-carcelación del acusado aun cuando el Ministerio Público sostenía que el peticionario había renunciado a ser excarcelado al solicitar y obtener la suspensión del juicio en dos ocasiones. Tratándose de un dictamen emitido por sentencia, no hubo opinión del Tribunal. Sin embargo, en opinión de tres de los miembros del Tribunal, por voz del Juez Asociado Señor Negrón Fernández, se explicó que el término máximo de la detención preventiva madura por el mero pasar del tiempo y no se entiende renunciado por una solicitud de posposición del caso. Véase Betancourt y Lebrón, op. cit, pág. 235. Recordando las discusiones recogidas en los diarios de sesiones de la Convención Constituyente, el Juez Negrón Fernández explicó la preeminencia del derecho a la libertad personal:
El derecho de un acusado a una posposición —bien se encuen-tre en libertad bajo fianza o bajo custodia— no puede medirse *570 en términos de renuncia o de sacrificio del derecho a su liber-tad personal, luego de seis meses de detención, ni éste puede medirse en términos de renuncia o de sacrificio del derecho a la posposición, si ésta procede. La posposición requiere el ejer-cicio de una discreción judicial, sobria, para proteger al acu-sado en el disfrute de su derecho a un juicio justo, y en sus oportunidades de defensa. Se concede por consideraciones que no afectan la libertad o custodia del acusado, y su concesión —que surte efectos de renuncia tan sólo en la esfera del juicio rápido— no puede derrotar su derecho a la libertad provisional sin fianza después de seis meses, ni puede condicionarse a que éste se renuncie. Ningún fundamento de buen gobierno justificaría extender las consecuencias de una renuncia del de-recho a juicio rápido —en su expresión legislativa— a un de-recho que engendra, por motivos superiores de política pública, una garantía inmediata de libertad. (Escolio omitido y énfasis suplido.) Sánchez v. González, supra, págs. 857-858.
Más recientemente, en Ruiz v. Alcaide, 155 D.P.R. 492 (2001), resolvimos que no procedía la excarcelación de un acusado que fue recluido en una institución psiquiátrica bajo tratamiento luego de que el tribunal determinara que no estaba capacitado para el proceso. Razonamos y resolvimos que el acusado no estaba detenido preventivamente, pues durante su reclusión no estaba en contemplación del juicio ni en espera de que se celebrara el proceso criminal en su contra. Dicha reclusión obedecía más bien a la necesidad de tratamiento.(7) En aquella ocasión explicamos que la suspensión del caso penal al amparo de la Regla 240 de Procedimiento Criminal, supra, protege el derecho del acusado a un juicio justo, puesto que someterlo a un procedimiento criminal que podría culminar en la privación definitiva de su libertad, cuando no tiene la capacidad mental necesaria para defenderse, sería una violación a un derecho constitucional al debido proceso de ley. Además, con ello se “promueve la confianza de la ciudadanía en el sistema judicial criminal, conservando su dignidad e integridad”. íd., págs. 501-502.
*571 III
El 26 de abril de 2008 el peticionario fue arrestado y al día siguiente ingresó a la institución penitenciaria de Ba-yamón al no prestar la fianza impuesta. Permaneció bajo la custodia del Departamento de Corrección en detención preventiva hasta el 25 de agosto de 2008, cuando fue tras-ladado al Hospital de Psiquiatría Forense, luego de ha-berse celebrado la vista de acuerdo con la Regla 240 de Procedimiento Criminal, supra, y haberse determinado que no estaba capacitado para ser sometido a juicio. Poste-riormente, el 17 de septiembre el tribunal determinó que el señor Pagán Medina estaba en condición de ser procesado, por lo cual levantó la paralización y señaló la continuación de los procedimientos.
Por su parte, el 12 de diciembre de 2008 el peticionario presentó una petición de hábeas corpus y solicitó ser excarcelado. Alegó que había estado más de seis meses bajo la custodia del Estado en detención preventiva y que su encarcelamiento era ilegal, pues se había excedido el límite máximo que permite nuestra Constitución. El Tribunal de Primera Instancia declaró “sin lugar” su petición y el Tribunal de Apelaciones se negó a expedir el recurso de cer-tiorari para revisar dicha determinación. Por lo tanto, hoy el señor Pagán Medina aún se encuentra detenido en es-pera de juicio.
Según el Ministerio Público, el período durante el cual estuvieron paralizados los procedimientos no debe tomarse en cuenta en contra del Estado cuando éste ha sido dili-gente en el encausamiento del caso. Específicamente, la Procuradora General arguye que al computar los términos de detención preventiva no se debe considerar el tiempo que transcurre desde que se solicita una vista para diluci-dar la capacidad del imputado o acusado para ser sometido a juicio y, por consiguiente, desde que se paralizan los pro-cedimientos por este motivo, hasta la fecha en que el tri *572 bunal llega a una decisión sobre la capacidad mental de la persona objeto del proceso penal. No nos convencen estos argumentos, pues excluyen la consideración del factor primordial en todo proceso penal: la libertad personal y su principio concomitante, la presunción de inocencia.
El derecho constitucional a no permanecer detenido preventivamente por más de seis meses no es solamente un principio valorado por nuestra sociedad, de tan alto calibre que fue elevado a rango constitucional,(8) sino que, además, es irrenunciable. Sánchez v. González, supra. Véase Betancourt y Lebrón, op. cit., pág. 235. Por eso, la presentación de una moción al amparo de la Regla 240 de Procedimiento Criminal, supra, no puede entenderse como una renuncia al derecho a no permanecer en detención preventiva en exceso de seis meses.
Los fundamentos de la opinión del Juez Asociado Señor Negrón Fernández en Sánchez v. González, supra, al ne-garse a aceptar que la solicitud de posposición del juicio fuera equivalente a una renuncia al término máximo de detención preventiva, son igualmente aplicables a la situa-ción que ahora atendemos. En Sánchez v. González se dis-cutía el efecto de una solicitud y autorización de posposi-ción del juicio sobre los límites constitucionales a la detención preventiva, mientras que en el caso que nos ocupa se trata de la solicitud y determinación de incapaci-dad del imputado para ser sometido a juicio. Ambas situa-ciones requieren “el ejercicio de una discreción judicial so- *573 bria, para proteger al acusado en el disfrute de su derecho a un juicio justo, y en sus oportunidades de defensa”. Sánchez v. González, supra, pág. 857.
No podemos obviar que el peticionario permaneció bajo la custodia del Estado, en espera de ser procesado criminalmente, después que se presentó su moción al amparo de la Regla 240 de Procedimiento Criminal, supra, hasta que el tribunal determinó que no era procesable. El que la presentación de la moción paralizó los procedimientos, de manera que el Ministerio Público estuvo impedido de procesar al señor Pagán Medina desde ese momento no cambia esta realidad. Hemos visto que la prohibición de enjuiciar a una persona que no reúna los criterios de capacidad para defenderse adecuadamente está íntimamente relacionada a su derecho constitucional al debido proceso de ley. Por eso, no podemos sostener la posición del Ministerio Público en cuanto al punto de partida del período ex-cluido del cómputo de los seis meses de detención preventiva, pues pondría al imputado en la situación de tener que escoger entre salvaguardar su derecho constitucional y estatutario a un debido proceso de ley y su libertad personal. Cualquier alternativa implica una renuncia inválida a sus derechos constitucionales.
En el cumplimiento de su deber de proteger el derecho al debido proceso de ley de los imputados de delito, el tribunal tiene la facultad de asegurarse de que se está procesando a una persona que comprende la naturaleza del procedimiento dirigido en su contra, de manera que pueda también dirigir su defensa. Además, el que el acusado sea procesable es un requisito de debido proceso de ley, que no solamente protege al mismo acusado, sino que es una garantía para la sociedad de la integridad de los procesos. Ruiz v. Alcaide, supra, pág. 502.
En Ruiz v. Alcaide, supra, resolvimos que no está detenida preventivamente una persona que está re- *574 cluida en una institución adecuada, recibiendo tratamiento por orden judicial, luego de determinarse que no está ca-pacitada para ser sometida ajuicio. Es congruente resolver ahora que al computar el término máximo de detención preventiva, debe excluirse, solamente, el tiempo en que el peticionario está efectivamente recluido en una institución adecuada para su tratamiento, por orden del tribunal. Ello es así, precisamente, porque es durante ese término que no está sujeto a ser procesado y, por lo tanto, la privación de su libertad responde a otras razones y no está bajo deten-ción preventiva.
Por lo tanto, al computar los seis meses de detención preventiva en este caso, no se debieron contar los días du-rante los cuales el peticionario estuvo recluido bajo trata-miento, es decir, entre el 25 de agosto de 2008 y el 17 de septiembre de 2008, cuando se determinó que era procesa-ble nuevamente.(9) La fecha a partir de la cual se interrum-pió dicho cómputo es el día en que se traspasó la custodia del peticionario del Departamento de Corrección al Hospital de Psiquiatría. Decidir lo contrario dejaría al arbitrio del Estado retener al acusado bajo su custodia después de la orden de reclusión, sin trasladarlo, en perjuicio de su libertad. La resolución judicial que determinó que el señor Pagán Medina no era procesable, dictada el 20 de agosto de 2008, no dio inicio a la reclusión para tratamiento, por lo cual tampoco dio comienzo al período que debe excluirse del cómputo de la detención preventiva.
En fin, al calcular los días desde el 26 de abril hasta el 25 de agosto de 2008, y sumarle los transcurridos desde el 17 de septiembre hasta el 12 de diciembre de 2008, encon-tramos que pasaron más de seis meses desde que el peti-cionario fue detenido preventivamente. Procedía expedir el auto de hábeas corpus.
*575 Por los fundamentos antes expuestos, revocamos la re-solución del Tribunal de Apelaciones que, al no expedir el “certiorari”, sostuvo la negativa del Tribunal de Primera Instancia a expedir el auto de habeas corpus. Ordenamos la excarcelación inmediata del señor Pagán Medina y devol-vemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton hizo cons-tar que por las razones expuestas en su opinión disidente en Ruiz Ramos v. Alcaide está conforme en este caso. El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita.

 Sánchez v. González, 78 D.P.R. 849, 850 (1955), opinión del Juez Asociado Señor Negrón Fernández.

 La certificación del Departamento de Corrección indica las fechas en que el señor Pagán Medina estuvo ingresado a la institución penal de Bayamón. Dicho documento, en lo pertinente, relata lo siguiente:
“Se certifica que el confinado Benjamín Pagán Medina, ingresó a la Institución 705 de Bayamón el 27 de abril de 2008 ....
“A la fecha del 25 de agosto de 2008 el confinado ingresó al Hospital Forense en Río Piedras hasta el 22 de septiembre de 2008 según se desprende en el expediente criminal para un total de 27 días.
“Del 26 de abril al 25 de agosto de 2008 y del 22 de septiembre de 2008 al 17 de diciembre de 2008, el confinado lleva ingresado 207 días, equivalente a 6 meses con 27 días de reclusión.” (Enfasis suplido.)

 En Camareno Maldonado v. Tribunal Superior, 101 D.P.R. 552 (1973), nos expresamos sobre la capacidad mental necesaria para que se dicte sentencia contra el acusado. Particularmente, expresamos que:
“Lo determinante es si el acusado ... es incapaz de comprender la naturaleza y propósito de los procedimientos y de participar en el acto, con plena consciencia de su significado, y con oportunidad de expresarse sobre las razones que a su juicio impi-dan que se dicte sentencia.” Id., pág. 560.
Luego, recordando los postulados que garantizan un debido proceso de ley al acusado, en Pueblo v. Santiago Torres, 154 D.P.R. 291 (2001), retomamos el tema de la no procesabilidad del imputado de delito y resolvimos que sólo procede el archivo permanente de la acusación después de celebrar una vista formal a esos fines.

 Por su parte, la profesora Helen Silving señala que la capacidad para ser sometido a un proceso “debe formularse en términos de la ‘capacidad del imputado para dirigir su defensa, de manera que tenga sentido, en procedimientos seguidos contra él’ y no en términos de ‘capacidad para asistir en la defensa’ ”. (Citas omitidas.) H. Silving, Elementos Constitutivos del Delito, (G.R.Carrio, trad.), Río Pie-dras, E.D.U.P.R., 1976, pág. 279.

 “Regla 219. Fianza; condiciones; requisitos.
“(a) Antes de la convicción. Las condiciones impuestas y la fianza prestada en cualquier momento antes de la convicción garantizarán la comparecencia del acu-sado ante el magistrado o el tribunal correspondiente y su sumisión a todas las órdenes, citaciones y procedimientos de los mismos, incluyendo el pronunciamiento y la ejecución de la sentencia, así como la comparecencia del acusado a la vista preli-minar en los casos apropiados, y que en su defecto los fiadores pagarán al Estado Libre Asociado de Puerto Rico determinada cantidad de dinero.” 34 L.P.R.A. Ap. II.

 El delegado señor Alvarado explica que:
“Al redactarse esta medida, se tuvo en cuenta ... la legislación vigente. La le-gislación vigente concede al fiscal 60 días para radicar la acusación. Y entonces dispone que el juicio debe celebrarse dentro de 120 días después de radicada la acusación. Y en total establece un término de 180 días desde que el acusado es detenido para responder, hasta que se somete a juicio, 180 días, que son seis meses que hemos venido consignando.” 3 Diario de Sesiones de la Convención Constitu-yente 1594-1595 (2003).
A su vez, el señor Reyes Delgado aclaró que:
“Ya la [Asamblea] Legislativa insular ha fijado por ley términos que se conside-ran razonables para que se actúe .... Si dentro de esos seis meses ahora no se le celebra juicio, el fiscal pide el archivo y sobreseimiento y especialmente si se trata de un felony, procede otra vez a arrestar al individuo y a recluirlo preventivamente y puede tenerlo otros seis meses en la cárcel sin celebrarle juicio.
“Y a eso es a lo que vamos nosotros encaminando este precepto: que se usen los seis meses de que la legislación local ha tenido a bien proveer al ministerio público para que se haga efectiva la maquinaria del pueblo en la administración de la justi-cia penal.” íd., págs. 1595-1596.
El Informe de la Comisión de la Carta de Derechos indica que lo que se propuso precisamente, fue evitar la práctica señalada por el Delegado Reyes Delgado: “impe-dir que se encarcele a una persona por más de seis meses sin celebrarle juicio. Actualmente es posible lograr esto mediante la radicación de acusaciones sucesivas, cada vez que finalice el término de ciento veinte días que marca la ley.” 4 Diario de Sesiones de la Convención Constituyente 2571 (2003).

 No obstante, según también señalamos, no se puede permitir una reclusión de esta naturaleza ad infinitum. Ruiz v. Alcaide, 155 D.P.R. 492 (2001).

 Véase J.E. Fontantet Maldonado, El proceso penal de Puerto Rico, San Juan, Editorial InterJuris, 2008, T. 1, págs. 243-244:
“En Puerto Rico, el derecho a gozar de la presunción de inocencia y el derecho a gozar de la libertad bajo fianza antes de la convicción mediante la presentación de una fianza razonable en las circunstancias del caso figuran entre los pilares sobre los cuales se asienta nuestro sistema democrático de vida, y los intentos por socavarlos no han tenido éxito. De hecho, el 6 de noviembre de 1994, el Pueblo de Puerto Rico, mediante referéndum rechazó la enmienda a la Carta de Derechos de la Constitución del E.L.A. que se le sometiera para eliminar el derecho absoluto a la fianza antes de la convicción.”

 Al determinarse nuevamente procesable el 17 de septiembre de 2008, pode-mos concluir que desde luego cesó el tratamiento del peticionario.