José Camareno Maldonado, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Vicente López Pérez, Juez, demandado; El Pueblo de Puerto Rico, interventor.

*Número:* O-73-64      *Resuelto:* 10 de agosto de 1973

*Santos P. Amadeo* y *José Enrique Amadeo,* abogados del peticionario; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Adolfo J. Vilá, Procurador General Auxiliar,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El peticionario fue acusado conjuntamente con otras tres personas de tres infracciones a la Ley de Narcóticos de 1959, 24 L.P.R.A. secs. 973 y siguientes. Se imputó a los acusados que para el 5 de febrero de 1970, en Santurce, Puerto Rico, actuando en concierto y de común acuerdo (a) tenían en su posesión y dominio, (b) ocultaron y transportaron, y (c) vendieron la droga narcótica conocida como heroína.

Surge de los autos originales del caso que al ser llamado para vista el 4 de noviembre de 1970, el aquí peticionario solicitó, por mediación de su abogado, que se nombrara un tribunal de peritos médicos que la examinara a los fines de determinar si estaba en estado procesable. El tribunal de instancia accedió y designó a los doctores José Luis Valderrá-

banos y Fernando Tejedor para que practicaran el examen solicitado. Así lo hicieron. El 25 de enero de 1971, a base del informe del Dr. Tejedor al efecto de que el acusado no se encontraba en estado procesable, se ordenó por el tribunal de instancia que fuera recluido en el Hospital de Psiquiatría para recibir tratamiento.

El 11 de febrero de 1971 tres médicos especializados en psiquiatría, los doctores Fernando Tejedor, William Galíndez Antelo y Alfredo Hurtado De Mendoza, examinaron nuevamente al peticionario y determinaron que se encontraba capacitado para ser sometido a proceso. Con vista de dicho dictamen el tribunal de instancia señaló el caso para juicio, que se celebró los días 7, 8 y 13 de abril de 1971 ante un jurado. El peticionario no hizo planteamiento alguno respecto de su condición mental ni antes de iniciarse ni en momento alguno durante el juicio. Por razones que no viene al caso mencionar, dos de las personas acusadas conjuntamente con el peticionario no fueron juzgadas con él. El peticionario y la coacusada Antonia Torres Robles fueron juzgados en el mismo juicio. El jurado rindió veredicto de culpabilidad contra ambos por los mencionados cargos imputádosles.

El 26 de abril de 1971, es decir, trece días después de rendido el fallo condenatorio, se llamó el caso ante el tribunal de instancia para pronunciamiento de sentencias. Ocurrió el incidente que transcribimos a continuación:

"SRA. SECRETARIA:

· (Llama los casos para Pronunciamiento de Sentencia)

HON. JUEZ:

Está preparado el compañero?

SR. ABOGADO:

Así es, Vuestro Honor, estamos listos.

HON. JUEZ:

· Estos casos se ventilaron el 7, el 8 y el 13 de abril de 1971. Se le imputaba a estos acusados, José Camareno Maldonado y Antonia Torres Robles, tres cargos relacionados con tres Infracciones a la Ley de Drogas y Narcóticos de Puerto Rico. Los

acusados comparecieron representados por su abogado. Reiteraron su alegación de no culpable, anunciaron que estaban preparados para vista del caso y se procedió a la desinsaculación de un Jurado. Este Jurado luego de oír la prueba pertinente y recibir la instrucción del Tribunal, regresó con un veredicto declarando a estos acusados culpables de los tres cargos que se le imputaban.

El Tribunal luego de aceptar los veredictos, pronunció su fallo declarando a estos acusados culpables de los tres cargos que se le imputaban, que eran ocultación y transportación, posesión y venta de la droga narcótica conocida como heroína y a petición de la Defensa, se señaló el pasado 8 de abril para el Pronunciamiento de Sentencia, no, digo, el pasado 19 de abril para el Pronunciamiento de Sentencia. En dicha ocasión no se pudo traer al acusado y a petición de la Defensa se señaló el día de hoy para el Pronunciamiento de Sentencia.

En el día de hoy han comparecido ambos acusados representados por su abogado. Así mismo, está presente el señor Fiscal y el Tribunal pregunta primero al compañero de la defensa, si cree que existe algún impedimento en el día de hoy por lo cual no se le pueda dictar sentencia en el día de hoy.

SR. ABOGADO:

No existe ninguno, Su Señoría.

HON. JUEZ:

Le pregunto a la acusada, Antonia Torres Robles, si ella cree que existe algún impedimento por lo cual no se le pueda dictar sentencia en el día de hoy.

SRA. TORRES ROBLES:

R. ¿Cómo?

P. Usted cree que existe alguna razón por la cual no se le pueda dictar sentencia?

R. No.

HON. JUEZ:

Le pregunto al acusado, José Camareno Maldonado, si él cree que existe alguna razón por la cual no se le pueda dictar sentencia en el día de hoy.

R. Tendría que hablar primero con el papá mío un momentito.

Que se acerque acá. Pase acá el padre, si está presente en sala.

PADRE DEL ACUSADO:

R. No, está bien.

HON. JUEZ:

No existe impedimento alguno para el pronunciamiento de sentencia.

Le pregunto si usted quiere decir algo, manifestar algo al Tribunal antes de que se dicte sentencia.

SR. JOSÉ CAMARENO MALDONADO:

Señor Juez, yo lo único que sé, aquí no se sabía, yo era adicto, que estaba rehabilitado ya y que soy veterano pensionado ciento por ciento mentalmente. Eso no se presentó aquí, el abogado mío no presentó ningún récord de ninguna clase de eso.

HON. JUEZ:

Bien. Habiendo manifestado la acusada Torres Robles que no existe impedimento para el Pronunciamiento de Sentencia y que no desea manifestar nada, ni informar nada al Tribunal antes, el Tribunal procede a dictar sentencia contra esta acusada Antonia Torres Robles y la condena en el caso que lleva el número G70-1849, 50 y 51, en cada uno de los tres cargos a cumplir la pena de cinco (5) a siete (7) años de presidio. Todas las penas concurrentemente. En cuanto al acusado, José Camareno Maldonado, habiendo manifestado este acusado que no existe impedimento alguno para el pronunciamiento de sentencia, el Tribunal condena al acusado José Camareno Maldonado en los casos que llevan el número G70-1843, 44 y 45, en todos y cada uno de los cargos, a cumplir la pena de seis (6) a doce (12) años de presidio. En estos casos las penas son consecutivas. Puede llevárselos el márshal.

SR. ABOGADO:

Con permiso del Tribunal.

HON. JUEZ:

Puede retirarse el compañero."

El peticionario apeló para ante nos impugnando el fallo condenatorio. Señaló como errores que el veredicto del jurado no fue por unanimidad y que la prueba aportada en su contra era insuficiente para sostener la convicción. El 28 de marzo de 1972, en el caso número Cr-71-125, dictamos sentencia confirmando las sentencias apeladas. En dicho recurso de apela-

ción el aquí peticionario y entonces apelante no hizo planteamiento alguno respecto del incidente que hemos transcrito.

Fechado el 15 de diciembre de 1972 el peticionario radicó ante el tribunal de instancia un escrito titulado "Moción solicitando se dejen sin efecto las sentencias dictadas contra el peticionario: Regla 192.1 de las de Procedimiento Criminal." Alegó (a) que al momento de dictarse sentencia existía un impedimento para ello, basándose en el incidente transcrito a que hemos hecho referencia; (b) "que de ser ciertas sus alegaciones respecto de su condición mental, la inacción de su abogado defensor [1] en el transcurso del pronunciamiento de las sentencias" le privó de su derecho constitucional a una efectiva y eficaz asistencia de abogado; y, (c) que "al inhibirse de investigar y escudriñar las alegaciones del peticionario en cuanto a su condición mental antes de dictar sentencia, el juez sentenciador privó al peticionario de su derecho a un juicio justo e imparcial garantizado por la Quinta Enmienda a la Constitución de los Estados Unidos."

El tribunal de instancia declaró sin lugar dicha moción e igual resolución dictó al serle solicitada la reconsideración. Ha recurrido ante nos el peticionario, alegando como error que el tribunal recurrido no señalara una vista, según le fue solicitado, para discutir los fundamentos de su moción, los cuales reproduce en su solicitud de *certiorari*. Expedimos el auto.

En *Pueblo* v. *Hernández*, 94 D.P.R. 116 (1967), señalamos como se desarrolló en el derecho consuetudinario inglés la práctica de inquirir del acusado si tenía algo que decir antes de pronunciarse sentencia. Señalamos las razones históricas que sostenían esa práctica, a saber, la severidad de los castigos que se podían imponer, [2] y el hecho de que no le estaba

---

[1] Los abogados que representaron al peticionario durante el juicio y al dictarse sentencia no son los que le representan en el recurso que nos ocupa.

[2] Los delitos graves, excepto mutilación y hurto, eran punibles con la muerte. Además, la convicción aparejaba la muerte civil y la confiscación

558

permitido al convicto estar asistido de abogado ni prestar testimonio a su favor. Esas razones constituyen historia pasada y carecen de actualidad. Hace mucho tiempo que desaparecieron.

Estamos de acuerdo con el comentario del Comité Consultivo sobre Sentenciamiento y Revisión (*Advisory Committee on Sentencing and Revision*) de la American Bar Association al efecto de que: "El principal argumento que queda para justificar la formalidad de interpelar al acusado sobre si desea decir algo antes de que se pronuncie sentencia aparenta ser su efecto terapéutico." Sobre esa base dicho Comité Consultivo recomienda que se mantenga el derecho a la alocución. (³)

La Regla 166 de las de Procedimiento Criminal (⁴) así lo hace como parte de nuestro ordenamiento procesal.

Pero más importante que el efecto terapéutico de que habla el Comité Consultivo mencionado, que permite al acusado un desahogo personal, (⁵) la Regla 166 da la oportunidad al inculpado de exponer razones, si las hubiere, para no dictar sentencia. En este sentido, nadie mejor que su abogado,

de los bienes del convicto a favor de la corona. *Hernández,* supra, a la pág. 117.

(³) Véase *"Standards Relating to Sentencing Alternatives and Procedures"* folleto de la American Bar Association (Diciembre de 1967) en que se publica el proyecto sobre *Minimum Standards for Criminal Justice.* Véase además Barrett, *Allocution,* 9 Mo. L. Rev. 115, 232 (1944).

(⁴) "En casos de delitos graves (*felonies*), al comparecer el acusado a oír la sentencia, el tribunal le informará de la naturaleza del cargo contenido en la acusación y del pronunciamiento del fallo, y le preguntará si existe alguna causa legal por la cual no deba procederse a dictar sentencia. Si no existiere tal causa legal, el tribunal dictará sentencia. Si el acusado no estuviere representado por abogado, el tribunal le informará de su derecho a apelar y, a solicitud del acusado, el secretario preparará y presentará un escrito de apelación cumpliendo con los requisitos que exigen estas reglas."

(⁵) La interpelación debe hacerse directamente al acusado para que éste se exprese personalmente si así lo desea. *Pueblo* v. *Hernández,* supra; *Pueblo ex rel. López* v. *Pérez Peña,* 54 D.P.R. 804 (1939); *Green* v. *United States,* 365 U.S. 301.

conocedor del derecho, para que exprese aquellos fundamentos que constituyan impedimentos legales para que la sentencia se pronuncie. Es la intervención del abogado en ese momento lo que da eficacia al acto de alocución, circunstancia que no existía cuando se desarrolló esa práctica en el derecho consuetudinario inglés. El juez de instancia cumplió cabalmente con su obligación bajo la citada Regla 166, y tanto el abogado defensor como el acusado se expresaron. El abogado informó que no había impedimento para que se dictara sentencia. Es de suponerse que al así expresarse lo hizo en el descargo pleno de su responsabilidad para con su cliente y para con el tribunal. Carece de base y resulta peregrina la afirmación de que su "inacción" privó al peticionario de una efectiva y eficaz asistencia de abogado.

La Regla 168 de las de Procedimiento Criminal señala cinco situaciones que impedirían que se dictara sentencia. En lo pertinente dispone:

"El acusado podrá *solicitar, y demostrar* en el caso que proceda, que no debe dictarse sentencia en su contra, únicamente por las siguientes causas:

(a) Que ha desarrollado una incapacidad mental *con posterioridad* a haberse rendido el veredicto o haberse pronunciado el fallo.

(b) .            .            .            .            .            .            .            .

(e) .            .            .            .            .            .            .            ."

(Énfasis nuestro.)

■ Puede verse de una lectura de la transcripción del incidente, supra, que el peticionario no solicitó que no se dictara sentencia. Mucho menos *demostró* haber desarrollado alguna incapacidad mental *con posterioridad* a haberse rendido el veredicto o pronunciado el fallo. Meramente señaló estar pensionado por una incapacidad mental. Los autos demuestran que tres especialistas en psiquiatría le encontraron procesable y así lo dictaminaron, habiéndose celebrado el juicio en su contra sin que se hiciera planteamiento alguno

sobre su incapacidad mental. Habían transcurrido solamente trece días desde que terminó el juicio y se rindió veredicto condenatorio hasta que se le llamó para escuchar la sentencia. Bajo las circunstancias el juez sentenciador estuvo justificado para resolver, en el ejercicio de una sana discreción, que no había impedimento para dictar sentencia.

La Regla 169 de las de Procedimiento Criminal[6] remite a la Regla 240 del mismo ordenamiento cuando se alegare la incapacidad mental como causa para que no se dicte sentencia. La Regla 240, en su inciso (a), aquí pertinente, dispone:

"(a)  Vista; peritos.—En cualquier momento después de presentada la acusación o denuncia y *antes de dictarse la sentencia, si el tribunal tuviere base razonable para creer que el acusado está mentalmente incapacitado,* inmediatamente suspenderá los procedimientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquiera otra prueba pertinente que ofrezcan las partes." (Énfasis nuestro.)

La incapacidad mental a que se refiere dicha regla no es necesariamente aquella que justifica la existencia de una pensión de las fuerzas armadas, que es lo que alegó el peticionario. Lo determinante es si el acusado, en el momento en que es llamado para dictarle sentencia, es incapaz de comprender la naturaleza y propósito de los procedimientos y de participar en el acto, con plena consciencia de su significado, y con oportunidad de expresarse sobre las razones que a su juicio impidan que se dicte sentencia. Véanse Rubin, *The Law of Criminal Correction,* publicación de West Publishing Co., 1963, a la pág. 502; Weihofen, *Mental Disorder as a Criminal Defense,* ed. 1954, a la pág. 459.

---

[6] "Regla 169. Sentencia; Incapacidad Mental Como Causa Por la Cual no Deberá Dictarse.—

Cuando se alegare la incapacidad mental como causa para que no se . dicte sentencia, se seguirá el procedimiento dispuesto en la Regla 240."

■ El peticionario demostró palmariamente no estar incapacitado para satisfacer dichos criterios. Demostró entender a cabalidad que se le iba a sentenciar por los delitos de que fue convicto, y quiso aprovecharse de su alegada condición de pensionado por incapacidad mental en busca de alguna ventaja en el pronunciamiento de sentencia. El hecho de que se hubiese dictaminado en una ocasión que no estaba en estado procesable perdió su importancia ante el dictamen posterior de los tres especialistas en psiquiatría al efecto de que estaba en condiciones de ser procesado. Salvo demostración en contrario se presume que continuaba en esas condiciones al momento de ser llamado para escuchar sus sentencias. *Cruz* v. *Bruno*, 76 D.P.R. 966, 973 (1954) y casos allí citados.

Desde *Nobles* v. *Georgia*, 168 U.S. 398, 407, 18 S.Ct. 87, 42 L.Ed. 515 (1897), resolvió el Tribunal Supremo de los Estados Unidos que cuando se sugiere el *issue* de insania luego de rendirse veredicto de culpabilidad o luego de dictarse sentencia pero antes de su ejecución, bajo la *common law* "el juez no venía obligado, como cuestión de derecho, a convocar un jurado y celebrar otro juicio, sino que debía tomar aquella acción que en su discreción considerase mejor." Citó con aprobación a *Laros* v. *Commonwealth*, 84 Penn. St. 200, en que se dijo que en situaciones como ésta debe descansarse en la sana discreción del tribunal sentenciador. Véase al mismo efecto, *Lee* v. *United States*, 91 F.2d 326, 331 (1937), resuelto por la Corte de Apelaciones para el Quinto Circuito.

En *Phyle* v. *Duffy*, 334 U.S. 431, 439 (1947) se reitera la doctrina establecida en *Nobles*, supra, y se dijo: "Entendemos el caso *Nobles* como autoridad en el sentido de que un acusado convicto no puede automáticamente impedir la ejecución de una sentencia mediante la surgerencia de insania, y que debe dejarse en libertad a un tribunal estatal, y en particular al juez, para que determine, en el ejercicio de su discreción, si los hechos justifican una investigación completa y

una vista sobre la condición mental de una persona sentenciada a muerte."

■ La Regla 240, en su inciso (a) antes transcrito, precisamente deja a la discreción del juez sentenciador la determinación de si hay base razonable para creer que el acusado no está mentalmente capacitado para escuchar la sentencia a serle impuesta. El señalamiento de una vista para determinar el estado mental del peticionario no se justificaba. No hay base en los autos de este caso para que intervengamos con la discreción ejercitada por el juez de instancia.

■ La Regla 192.1 de Procedimiento Criminal invocada por el peticionario requiere como norma general que el tribunal ante el cual se presenta una moción de un convicto y sentenciado alegando su derecho a ser puesto en libertad, disponga que se notifique al fiscal con copia de la moción y que celebre una vista para pasar sobre sus méritos. Pero la misma regla, en su inciso (b), dispensa el cumplimiento de esa norma si la moción y los autos del caso concluyentemente demuestran que la persona no tiene derecho a remedio alguno. En este caso el tribunal no señaló vista. No abusó de su discreción, considerados los planteamientos del peticionario. No se cometieron los errores imputados.

*Se anulará el auto expedido y se confirmará la resolución dictada por el Tribunal Superior, Sala de San Juan, en 15 de diciembre de 1972.*