

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>          v.<br><br>Benjamín Pagán Medina<br><br>    Peticionarios | Certiorari<br><br>2010 TSPR 16<br><br>178 DPR \_\_\_\_ |

Número del Caso: CC-2009-74

Fecha: 9 de febrero de 2010

Tribunal de Apelaciones:

      Región Judicial de Carolina Panel V

Panel integrado por su presidente, el Juez Arbona L   ago, la Jueza Cotto Vives y el Juez Salas Soler.

Abogada de la parte peticionaria:

         Lcda. Ana Esther Andrade Rivera

Oficina del Procurador General:

         Lcda. Zaira Z. Girón Anadón
         Subprocuradora General

Materia: Habeas Corpus

Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correccione   s del proceso de compilación y publicación oficial de las decisio   nes del Tribunal. Su distribución electrónica se hace como   un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                       CC-2009-0074      Certiorari

Benjamín Pagán Medina

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

**(En Reconsideración)**

San Juan, Puerto Rico, a 9 de febrero de 2010.

Nos corresponde delimitar nuevamente el alcance de la llamada cláusula de "detención preventiva" que establece nuestra Constitución en su Carta de Derechos,[1] a la luz de lo resuelto por esta Curia en Ruiz v. Alcaide, 155 D.P.R. 492 (2001).[2]

---

[1] Art. II, Sec. 11. Const. E.L.A., Tomo 1.

[2] Ruiz v. Alcaide, 155 D.P.R. 492 (2001), constituyó la primera ocasión en que este Tribunal se expresó con relación a la posibilidad de la interrupción del término de seis meses de detención preventiva, que establece esta cláusula de nuestra Constitución. La decisión estableció la viabilidad de la interrupción, destronando así la concepción de que este término era uno tajantemente definitivo o perentorio. En Sánchez v. González, 78 D.P.R. 849 (1955), se señaló que el término de esta cláusula no era uno renunciable, pero no se pautó norma alguna en vista de que el caso se resolvió mediante sentencia. El Juez Asociado señor Negrón Fernández, emitió una Opinión concurrente, a la cual se unieron el Juez Presidente

El 18 de febrero de 2009, emitimos Opinión en el presente caso, Pueblo v. Pagán Medina, res. 18 de febrero de 2009, 2009 T.S.P.R. 31, 175 D.P.R. ___ (2009), en la que pautamos que una vez se determina judicialmente que un imputado de delito no es procesable bajo la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y se ordena su reclusión para tratamiento, tan sólo se puede excluir del cómputo del término máximo de detención preventiva el tiempo durante el cual éste estuvo efectivamente en una institución adecuada para su tratamiento.[3]

Por la presente, reconsideramos nuestra posición para establecer que el tiempo a excluirse del referido término máximo de detención preventiva se comenzará a contar a partir de la determinación por parte del juez de instancia de *"base razonable"* para creer que el acusado se encuentra mentalmente incapacitado.

## I

Los hechos que nos son pertinentes se encuentran perfectamente reseñados en la Opinión que hoy reconsideramos, Pueblo v. Pagán Medina*, supra*, y que pasamos a reproducir:

---

señor Snyder y el Juez Asociado Señor Sifre. La Sentencia contó con los votos disidentes del Juez Asociado señor Borinquen Marrero y el Juez Asociado señor Emilio S. Belaval. El Juez Asociado señor Pérez Pimentel concurrió con el resultado. En la Opinión concurrente del Juez Asociado señor Negrón Fernández se señaló específicamente que las solicitudes de suspensión del juicio, por parte del acusado, no equivalen a una renuncia al derecho a que la detención preventiva no exceda de seis (6) meses. No obstante, en la opinión también se expresó **que este derecho a un término máximo de seis (6) meses no era uno absoluto.**

[3] Contra esa determinación compareció el 6 de marzo de 2009 la Procuradora General, en Solicitud de Reconsideración.

El 26 de abril de 2008, el señor Pagán Medina fue arrestado por violación a los artículos 122 y 208(b) del Código Penal y al artículo 5.05 de la Ley de Armas. Fue conducido ante un magistrado, quien determinó que hubo causa probable para su arresto y le impuso una fianza de cinco mil dólares. El señor Pagán Medina no prestó la fianza y permaneció detenido preventivamente desde entonces. Posteriormente, el 12 de mayo de 2008, a solicitud de la defensa, el tribunal paralizó los procedimientos y ordenó una evaluación psiquiátrica del imputado, a tenor con la Regla 240 de Procedimiento Criminal, para determinar si el señor Pagán Medina estaba capacitado para ser procesado criminalmente por los cargos en su contra.

La vista se celebró el 20 de agosto de 2008. Compareció el psiquiatra del Estado, el Dr. Rafael Cabrero Aguilar, quien testificó bajo juramento que evaluó al señor Pagán Medina y que, en su opinión, el imputado no reunía los criterios para ser procesado. El tribunal acogió la recomendación del perito médico y determinó que el imputado no se encontraba procesable. Así pues, ordenó el traslado del señor Pagán Medina al Hospital de Psiquiatría Forense de Río Piedras para que recibiera tratamiento.

El 17 de septiembre de 2008 se celebró otra vista, a la cual compareció, nuevamente, el Dr. Rafael Cabrero Aguilar. El perito testificó que el imputado estaba capacitado para comprender el proceso en su contra y ser sometido a juicio. Así lo determinó el tribunal, por lo cual ordenó el traslado del señor Pagán Medina a la institución penal y la continuación de los procedimientos.

El 12 de diciembre de 2008 el señor Pagán Medina presentó una petición de *hábeas corpus* ante el Tribunal de Primera Instancia. Alegó que se le había confinado, en calidad de sumariado, en exceso de seis meses sin habérsele celebrado juicio y a tono con la limitación constitucional, reclamó su excarcelación. El 17 de diciembre de 2008, el Tribunal de Primera Instancia declaró sin lugar el remedio solicitado con las siguientes expresiones: "no ha transcurrido el término de detención preventiva provista [sic] en ley, (excluyendo el tiempo transcurrido en evaluación al amparo de la Regla 240 de Procedimiento Criminal[)]".

El 8 de enero de 2009, mediante petición de *certiorari*, el señor Pagán Medina acudió al

Tribunal de Apelaciones. Adujo que el Tribunal de Primera Instancia había errado al resolver que el término de detención preventiva se había interrumpido el 12 de mayo de 2008, cuando el imputado solicitó la celebración de una vista para dilucidar su capacidad mental a tenor con la Regla 240 de Procedimiento Criminal. El señor Pagán Medina alegó que lo que procedía, para calcular la duración de su confinamiento y, por ende, la interrupción de su detención preventiva, era excluir solamente los días durante los cuales estuvo recluido en el hospital psiquiátrico. Anejó una certificación del Departamento de Corrección en la cual se relacionan las fechas en que estuvo ingresado en la institución penal de Bayamón.2 Por tanto, arguyó que habían transcurrido más de seis meses contados desde el 27 de abril de 2008, cuando ingresó a la institución penal, hasta la fecha de su solicitud de excarcelación el 12 de diciembre de ese año.

En cumplimiento de la orden para mostrar causa dictada por el Tribunal de Apelaciones el 8 de enero de 2009, el Procurador General alegó que el término de detención preventiva no debe incluir el período desde que el tribunal tiene una base razonable para creer que el acusado está mentalmente incapacitado hasta que determina que el imputado está finalmente capacitado para ser sometido a juicio, puesto que los procedimientos en contra del imputado de delito quedan interrumpidos y el Ministerio Público está impedido de continuar la acción penal. Por lo tanto, según el Procurador General, durante los 128 días desde la paralización de los procedimientos cuando el señor Pagán Medina presentó su moción al amparo de la Regla 240, hasta que el tribunal determinó nuevamente que éste era procesable, no estaba pendiente la celebración del juicio y el imputado no estaba detenido preventivamente. Así pues, concluyó que "el término de detención preventiva no puede transcurrir contra el Ministerio Público mientras éste se encuentre legal y constitucionalmente vedado de proseguir con el procesamiento criminal del acusado".

El 16 de enero de 2009, el Tribunal de Apelaciones denegó el auto de *certiorari*. El foro apelativo acogió la interpretación del Procurador General y resolvió que al computar el término de seis meses se excluyó correctamente el período durante el cual se dilucidaba la solicitud de la defensa al amparo de la Regla 240, es decir, aun

antes que se ordenara la reclusión, ya que desde que se presentó la solicitud el Ministerio Público quedó vedado de proseguir la acción criminal contra el acusado. Oportunamente, el 26 de enero de 2009, el señor Pagán Medina nos solicitó que revocáramos la resolución del foro apelativo. El 28 de enero de 2009 ordenamos a la Procuradora General mostrar causa por la cual no debiéramos hacerlo. El 4 de febrero de 2009 la Procuradora General compareció e invocó los mismos fundamentos que había presentado ante el Tribunal de Apelaciones, avalando la decisión recurrida y la determinación del tribunal de instancia.

## II

### A. La Cláusula de Detención Preventiva

El Artículo II, Sección 11 de la Constitución de Puerto Rico, *supra*, establece que la "detención preventiva antes del juicio no excederá de seis meses". El término "detención preventiva" se refiere al período anterior al juicio, en el cual el acusado se encuentra detenido preventivamente (sumariado) por razón de no haber prestado la fianza impuesta, y en espera de que se le celebre el correspondiente proceso criminal.[4]

La cláusula constitucional de detención preventiva tiene un propósito dual: asegurar la comparecencia del acusado a los procedimientos en defecto de la prestación de una fianza y, a su vez, evitar que a éste se le castigue excesivamente por un delito por el cual no ha sido juzgado.[5] Con relación a estos propósitos, la Profesora Resumil, haciendo referencia a

---

[4] Ruiz v. Alcaide, *supra*, pág. 502; Pueblo v. González Vega, 147 D.P.R. 692 (1999); Pueblo v. Figueroa Garriga, 140 D.P.R. 225, 232 (1996).

[5] Pueblo v. Paonesa Arroyo, res. 26 de febrero de 2008, 2008 T.S.P.R. 34, 173 D.P.R. ___ (2008).

su vez a <u>Sánchez</u> v. <u>González</u>, 78 D.P.R. 849 (1955), nos explica que la cláusula de detención preventiva pretende "evitar que a una persona a quien ampara una presunción de inocencia sea restringida por el Estado en el ejercicio de su poder de custodia con el único propósito de hacerle comparecer a juicio".[6]

En el Informe de la Comisión de la Carta de Derechos de la Convención Constituyente se advierte que, previo a la aprobación de la referida cláusula constitucional, era posible mantener a un acusado detenido mediante la presentación de acusaciones sucesivas cada vez que finalizaba el término de ciento veinte días que establecía el Artículo 448 del extinto Código de Enjuiciamiento Criminal de 1902, desde la acusación hasta la celebración del juicio.[7]

Es claro que esta salvaguarda constitucional de no más de seis meses sumariado en espera del inicio de juicio, se ha establecido como una garantía al ciudadano contra posibles excesos de autoridad, que evita que la restricción efectiva de la libertad —cuando ha mediado causa probable para un arresto— se convierta en un castigo anticipado por un delito no juzgado.[8] Ahora bien, con relación a la referida salvaguarda constitucional, y como ya señalamos, en

---

[6] O.E. Resumil, <u>Derecho Procesal Penal</u>, New Hampshire, Ed. Butterworth, 1993, T. 2, sec. 25.4(a), pág. 248.

[7] 4 Diario de Sesiones de la Convención Constituyente 2571 (1952).

[8] O.E. Resumil, *op. cit.* pág. 248.

la Opinión concurrente del Juez Negrón Fernández en Sánchez v. González, *supra*, se adelantó que ésta no era absoluta, expresión que fue confirmada por este Tribunal al considerar lo resuelto en el caso de Ruiz v. Alcaide*, supra.*

### B. Regla 240 de Procedimiento Criminal

La Regla 239 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada". Cuando nos referimos a la capacidad o incapacidad mental de una persona en el contexto de encarar un proceso judicial en su contra, aludimos al concepto de "procesabilidad del imputado".[9] El concepto procesabilidad, en términos más específicos, apunta a la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se confronta.[10]

La prohibición que establece la Regla 239, *supra*, tiene como propósito "impedir que se someta a juicio a un reo que es incapaz de comprender la naturaleza y propósito de los procedimientos que contra él se siguen, y como consecuencia, de defenderse adecuadamente".[11] Tal prohibición se fundamenta en la normativa jurídica medular que establece que encausar a

---

[9] Pueblo v. Castillo Torres, 107 D.P.R. 551, 555 (1978).

[10] Ruiz v. Alcaide, *supra*, pág. 499 (2001); E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, 1ra ed., Colombia, Ed. Forum, 1993, Vol. III, pág. 348.

[11] Pueblo v. Santiago Torres, 154 D.P.R. 291, pág. 299 (2001).

una persona no procesable viola el debido proceso de ley.[12]

El profesor Chiesa, en lo referente, expresa que "se trata de una exigencia de que el acusado pueda entender la naturaleza de los procedimientos, de forma que pueda ayudar —a su abogado y a si mismo— a su mejor defensa".[13]

Es en virtud de dicho precepto que la subsiguiente Regla 240 de Procedimiento Criminal, *supra*, en lo pertinente dispone lo siguiente:

> En cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, si el tribunal tuviere **base razonable** para creer que el acusado está mentalmente incapacitado, **inmediatamente suspenderá** los procedimientos y señalará una vista para determinar el estado mental del acusado. Deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. (Énfasis suplido.)

Del texto de esta Regla 240 es claro que una determinación inicial de no procesabilidad tiene que fundamentarse en "base razonable" por parte del juez que preside para creer que la persona se encuentra incapacitada mentalmente, en cuyo caso, se suspenderán inmediatamente los procedimientos. En primer lugar y ante un estatuto que tan celosamente protege la competencia o capacidad del imputado

---

[12] Ruiz v. Alcaide, *supra*, pág. 501; Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Medina v. California, 505 U.S. 437, 453 (1992) ("the criminal trial of an incompetent defendant violates due process"); Drope v. Missouri, 420 U.S. 162, 172 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966); Bishop v. United States, 350 U.S. 961 (1956). Véase, S.J. Kane, Competency to Stand Trial, 87 Geo. L.J. 1463, 1467 (1999).

[13] Chiesa Aponte, *op. cit.*, pág. 252.

que enfrenta el proceso en su contra, es importante apuntalar que es el juez que preside la sala quien tiene que velar por que en todo momento la persona denunciada o acusada se encuentre procesable. En ese contexto, la Regla 240 no sólo establece un mecanismo que garantiza el debido proceso de ley constitucional a un imputado de delito, sino que hace al juez de instancia custodio de ese mecanismo, imponiéndole un **deber ineludible.**[14]

Por eso, y como corolario de ese deber judicial, el tribunal puede encontrar "base razonable" para entender que el imputado se encuentra no procesable y suspender los procesos, incluso por encima de la objeción del propio imputado. Como ha señalado el Tribunal Supremo de los Estados Unidos, es contradictorio argumentar que un acusado puede encontrarse mentalmente incapaz y que a su vez pueda, consciente e inteligentemente, "renunciar" a su derecho de que el tribunal determine su capacidad mental para enfrentar el juicio.[15] Como también se ha señalado, "when circumstances raise a reasonable doubt about a defendant's competency, he cannot be master of his own pleadings".[16]

Ahora bien, el que el imputado de delito se encuentre capaz mentalmente requiere, como mínimo, que se halle lo suficientemente **coherente como para que le pueda proveer a su**

---

[14] Véase, Pate v. Robinson, *supra*, en el que el Tribunal Supremo de los Estados Unidos interpreta un estatuto muy similar a nuestra Regla 240.

[15] Íd.

[16] Seidner v. United State, 260 F.2d 732, 734 (D.C. Cir. 1958).

**abogado la información necesaria o relevante para la elaboración de su defensa.**[17] Más allá que la capacidad de recordar y relacionar información pertinente a los hechos, **el imputado debe ser capaz de comprender el significado del juicio y entender el papel que él desempeña en el proceso.**[18]

Notemos que los elementos antes mencionados constituyen, entre otros, indicadores básicos que deben considerarse por el juez de instancia al momento de emitir su determinación de improcesabilidad; elementos necesarios para la determinación de "base razonable". En ese sentido, la evaluación ("test") no puede ser una liviana o superficial. Como señaló el Tribunal Supremo de los Estados Unidos en Dusky v. United States, 362 U.S. 402, 402 (1960):

> it is not enough ... that the defendant is oriented to time and place and has some recollection of events, but that the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him.

Entre los indicadores que también pudieran sugerir la improcesabilidad de un imputado, se encuentran el que éste demuestre un comportamiento errático durante el proceso;[19] que al momento de alegarse su improcesabilidad se traiga ante la consideración del juez evidencia de un historial de comportamiento severamente irracional;[20] que se presente

---

[17] Incompetency to Stand Trial, 81 Harv. L.R. 454, 457 (1967).

[18] Íd.

[19] Pouncey v. United States, 349 F.2d 699 (D.C. Cir. 1965).

[20] Pate v. Robinson, *supra*.

evidencia de que el imputado se encuentra bajo influencia de drogas o sufriendo del "síndrome de retirada".[21] Además, este Tribunal ya ha resuelto que una evaluación siquiátrica, tarjetas de citas y hospitalizaciones en el Hospital de Siquiatría y resultados de exámenes que demuestran un cociente intelectual mermado, brindan "base razonable" para creer que el imputado está mentalmente incapacitado y para proceder a la vista de procesabilidad.[22]

Ya hemos establecido entonces que, "base razonable" para creer que la persona se encuentra incapacitado mentalmente, en el contexto de la Regla 240, conlleva el deber del juez de instancia de asegurase que la persona que está siendo procesada no se encuentre mentalmente incapacitado, o sea, se encuentre hábil para entender cabalmente los procedimientos. No obstante, es menester aclarar que, distinto a la incapacidad mental a la que se refiere la defensa de inimputabilidad, la incapacidad mental que contempla la Regla 240 de Procedimiento Criminal, *supra*, es la que puede darse en cualquier momento después de presentada la acusación o

---

[21] Hasnford v. United States, 365 F.2d. 920 (D.C. Cir. 1966). El "síndrome de retirada" es un síndrome de hiperactividad que ocurre como producto de la retirada de un fármaco hipnótico-sedante a un individuo dependiente física y/o psicológicamente, luego de haberlo utilizado por un período de tiempo de manera crónica, o por abuso de éste. Las manifestaciones incluyen convulsiones, deseo del fármaco, disfonía, cefalea, insomnio, ansiedad, anorexia, nauseas, vómito, debilidad muscular, taquicardia y tremor. La agitación y la confusión puede progresar a delirio, desorientación y alucinaciones.

[22] Pueblo v. Santiago Torres, *supra*.

denuncia, lo cual implica que ya se han cometido los hechos y se han considerado delictivos.[23]

Por eso, el sólo planteamiento de inimputabilidad que se presenta como eximente de responsabilidad criminal por parte de la defensa de un imputado, no constituye, de por sí, "base razonable" para creer que éste se encuentra mentalmente incapacitado y por ende activar los procedimientos al amparo de la Regla 240 de Procedimiento Criminal, *supra*.[24] Es claro que una persona puede, al momento de cometer los hechos que se le imputan, encontrarse totalmente incapaz mentalmente de entender la naturaleza criminal y consecuencias de éstos y, no obstante, estar perfectamente hábil en el proceso del juicio para entender los procedimientos que se llevan en su contra por esos mismos hechos.

### C. *"Efectos de la determinación de base razonable"*

Según el propio texto de la Regla 240 y la norma pautada por este Tribunal, la determinación inicial sobre si existe "base razonable" para dudar de la capacidad del acusado está conferida a la discreción del Tribunal de Primera Instancia.[25] También hemos señalado que el juez de instancia, una vez determina que existe "base razonable", tiene que "paralizar *ipso facto* todos los procedimientos, señalar una vista para determinar la condición mental del imputado, y

---

[23] Pueblo v. Castillo Torres, *supra*, pág. 555; Maldonado v. Tribunal, 101 D.P.R. 552, 560 (1973).
[24] Pueblo v. Santiago Torres, *supra*.

[25] Pueblo v. Santiago Torres, *supra*; Pueblo v. Rodríguez Galarza, 117 D.P.R. 455 (1986); Maldonado v. Tribunal Superior, *supra*; Pueblo v. Cruz Román, 84 D.P.R. 451 (1962).

nombrar uno o varios peritos para que evalúen al imputado y atestigüen sobre su condición mental".[26]

En Pueblo v. Rodríguez Galarza, 117 D.P.R. 455, 457 (1986), específicamente señalamos el procedimiento que establece la Regla 240:

> …de resolver [el tribunal] que existe base razonable, la Regla instruye mandatoriamente el procedimiento a seguir: Los procedimientos se suspenderán inmediatamente, se señalará una vista para determinar el estado mental del acusado, y se designará uno o varios peritos para que examinen al acusado, quien o quienes declararán en la vista señalada sobre el estado mental del imputado. La Regla permite además, que en la vista se presente cualquier otra prueba pertinente al estado mental del acusado que deseen ofrecer las partes. En otras palabras que,... una vez que se establece que existe una duda en cuanto a la capacidad mental del acusado, resulta mandatoria la intervención de un perito siquiatra, quien tendrá que evaluar al acusado y declarar en la vista de procesabilidad en torno a sus hallazgos.

## III

Argumenta la Procuradora General, en el contexto de la Regla 240 y lo resuelto en Ruiz v. Alcaide, *supra*, que "— mientras se encuentre pendiente el proceso dictado por la Regla 240— el acusado no se encuentra pendiente de la celebración de juicio, ya que el procedimiento penal queda suspendido en su totalidad y **el ministerio público está impedido de procesar al acusado**".[27]

---

[26] Pueblo v. Santiago Torres, *supra*, pág. 301; Pueblo v. Rodríguez Galarza, *supra*; Pate v. Robinson, *supra*, pág. 385; Chiesa Aponte, *op. cit.*

[27] Sol. de Reconsideración, págs. 8-9 (énfasis suplido).

Le asiste la razón a la Procuradora. En primer lugar, el proceso dictado por la Regla 240 no comienza con la vista de procesabilidad ("vista de Regla 240"), la cual hace obligatoria la comparecencia de prueba pericial, sino con la determinación de "base razonable" por parte del juez de instancia. **Mientras el imputado en quien se ha encontrado _base razonable_ para ordenar la evaluación de su condición mental se encuentre en espera de tal evaluación, el Ministerio Público se encuentra, a su vez, legal y constitucionalmente vedado —"con las manos atadas"— de proseguir con el procesamiento criminal que tiene el deber de ejecutar.**

Tal paralización responde a la aparente improcesabilidad del imputado. Por eso la Regla 240 no le consiente otra acción al juez que no sea suspender "inmediatamente" los procedimientos. De esta manera se asegura que nada más ocurra en el proceso que el imputado pudiera no tener la capacidad de entender, afectando su oportunidad de cooperar con su defensa. **Desde que el tribunal, ya sea _motu proprio_ o a solicitud de parte, paraliza los procedimientos fundamentado en "base razonable", se activa una presunción de improcesabilidad que puede ser o no revertida en la correspondiente vista de procesabilidad.** Si la "base razonable" se confirma, implica que el sumariado se encontraba no procesable desde el momento que se paralizaron los procedimientos y, por ende, el ministerio público absolutamente nada podía hacer. Mientras el imputado se

encuentra no procesable, el Estado se encuentra restringido constitucionalmente para poder continuar con los procesos en su contra.[28]

El examen y el testimonio pericial durante la vista de procesabilidad no hacen otra cosa que revisar la determinación inicial del juez de instancia, basada en la evaluación que éste hizo de la aparente improcesabilidad del imputado. El imputado no advino improcesable cuando el perito así lo certificó, sino que ciertamente ya lo estaba cuando el juez suspendió los procedimientos y ordenó la vista de procesabilidad. Es desde ese momento que el ciudadano no está sujeto a ser procesado, la privación de su libertad responde a otras razones y por ende no se encuentra bajo detención preventiva. Por lo tanto, ese periodo de tiempo debe de excluirse del cómputo del término máximo de detención preventiva.

Que el inicio del periodo de tiempo a ser excluido del cómputo del término máximo de detención preventiva se retrotraiga a la fecha de la determinación de "base razonable" que exige la Regla 240, no es algo que se da en un vacio. Más bien, obedece a la lógica y a la realidad. **¿Qué ocurre si una vez se determinó "base razonable" para paralizar los procedimientos, la prueba pericial que se presente durante la vista de Regla 240, y que tiene que**

---

[28] *Ruiz v. Alcaide*, supra, 501; *Commonwealth v. Ware,* 459 Pa. 334, 350, 329 A.2d. 264 (1974), *Commonwealth v. Bruno,* 435 Pa. 200, 205, n. 1, 255 A.2d 519 (1969); B.J. Winick, *Reforming Incompetency to Stand Trial and Plead Guilty: A Restated Proposal and a Response to Professor Bonnie*, 85 (Nm.3) J. Crim. L. & Criminology 571, 575-576 (1995).

celebrarse como próximo paso para corroborar la determinación inicial del juez, demuestra que el imputado sí se encuentra procesable? El efecto sería que la aparente improcesabilidad del imputado nunca se materializó, que debe entenderse que siempre estuvo procesable y el término de detención preventiva —que transcurre en contra del ministerio público y a favor del propio imputado— nunca se interrumpió.

A contrario *sensu*, si la prueba pericial ventilada durante la vista de Regla 240 **confirma** que el imputado no se encuentra procesable, es lógico pensar que esa misma era su condición mental al momento de la determinación inicial del juez, esto es, al momento de la determinación de "base razonable".

## IV

Estamos consientes que en ocasiones —como en el caso de autos— ha pasado mucho más tiempo del que se entiende como razonable para la celebración de la vista de procesabilidad. En Ruiz v. Alcaide, *supra*, señalamos correctamente que uno de los efectos de una determinación de no procesabilidad, conforme a lo dispuesto en la Regla 240 de Procedimiento Criminal, *supra*, es que el acusado permanecerá bajo la jurisdicción del Tribunal.[29]

Por lo tanto, y considerando lo aquí pautado, el tribunal deberá tomar las provisiones para, desde el momento

---

[29] *Ruiz v. Alcaide*, supra, 501; E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, 1era. ed., Colombia, Ed. Forum, 1993, Vol. III, pág. 362-363.

mismo en que determine la existencia de *base razonable* y ordene la evaluación requerida por la Regla 240, asegurarse que el imputado sea evaluado a la menor brevedad posible, so pena de desacato. Esto es, el Tribunal de Primera Instancia deberá, ya sea que la "base razonable" acontezca durante el proceso de vista preliminar, desde el acto mismo de la lectura del pliego acusatorio, o en cualquier momento del juicio –sobre todo si el acusado continúa sumariado–, asegurarse que se programe esta evaluación.

Además, si finalmente la evaluación pericial demuestra que la persona no se encuentra procesable —confirmándose así la determinación de *base razonable* inicial— entonces el tribunal deberá tomar las provisiones para que la orden de reclusión y traslado a la institución correspondiente se cumpla con las menos dilaciones posibles, nuevamente, so pena de desacato.

## V

Por todo lo anterior, reconsideramos lo resuelto en Pueblo v. Pagán Medina, *supra*,[30] y establecemos que, el tiempo a excluirse del cómputo del término máximo de detención preventiva de una persona que se encuentra improcesable bajo la Regla 240 de Procedimiento Criminal, *supra*, se comenzará a contar a partir de la determinación por parte del juez de instancia de *"base razonable"* para creer que el acusado o imputado estaba mentalmente incapacitado.

---

[30] Opinión de 18 de febrero de 2009.

Siendo así, se confirma la sentencia del Tribunal de Apelaciones, Región Judicial de Carolina.


                              Erick V. Kolthoff Caraballo
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                CC-2009-0074    Certiorari

Benjamín Pagán Medina

    Peticionario

**SENTENCIA**

San Juan, Puerto Rico, a 9 de febrero de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, reconsideramos lo resuelto en Pueblo v. Pagán Medina, res. 18 de febrero de 2009, 2009 T.S.P.R. 31, 175 D.P.R. \_\_\_\_ (2009), y establecemos que, el tiempo a excluirse del cómputo del término máximo de detención preventiva de una persona que se encuentra improcesable bajo la Regla 240 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, se comenzará a contar a partir de la determinación por parte del juez de instancia de *"base razonable"* para creer que el acusado o imputado estaba mentalmente incapacitado. Siendo así, se confirma la sentencia del Tribunal de Apelaciones, Región Judicial de Carolina.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta emitió Opinión disidente a la cual se une el Juez Presidente señor Hernández Denton. La Juez Asociada señora Rodríguez Rodríguez no intervino.

                Aida Ileana Oquendo Graulau
                 Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido


                v.
                                                *Certiorari*

  Benjamín Pagán Medina
                              CC-2009-74
        Peticionario



        Opinión Disidente emitida por la Jueza Asociada señora Fiol
        Matta a la cual se une el Juez Presidente señor Hernández
        Denton


        En San Juan, Puerto Rico, a 9 de febrero de 2010.

        Por las razones que habré de exponer, disiento de la conclusión a la que llega la mayoría de este Tribunal. Soy de opinión, en primer lugar, que este caso se tornó académico por hechos sucedidos durante el trámite de reconsideración. Sin embargo, como la mayoría arriba a otra conclusión y emite una opinión revocatoria en reconsideración, debo expresar mi más enérgico disenso en cuanto a los méritos. Al revocar el precedente establecido por este Tribunal en <u>Pueblo v. Pagán Medina</u>, 2009 T.S.P.R. 31 (2009), la opinión emitida debilita excesivamente el derecho constitucional a no estar sujeto a detención preventiva por más de seis meses y lo somete injustificadamente al arbitrio del Estado.

Como regla general, un asunto académico no es justiciable y, por ende, un tribunal no debe pronunciarse en cuanto a sus méritos. Véanse: Asoc. de Periodistas v. González, 127 D.P.R. 704, 719 (1991); R. Serrano Geyls, Derecho constitucional de Puerto Rico y Estados Unidos, San Juan, Colegio de Abogados, 1986, Vol. I, pág. 97- 100. Un caso se torna académico cuando deja de presentar una controversia entre partes adversas, debido a cambios en los hechos o en el derecho. Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 724-725 (1980). Como sabemos, ésta norma está sujeta a una excepción, conocida como "excepción de recurrencia", que permite al tribunal resolver un caso que se ha tornado académico cuando el asunto ante su consideración es capaz de repetirse pero, por su naturaleza, con toda probabilidad también advendría académico y eludiría la revisión judicial. P.N.P. v. Carrasquillo, 166 D.P.R. 70, 76 (2005). La aplicación de esta excepción depende de un juicio de probabilidades. Además de la identidad de las partes involucradas en el posible pleito futuro, el Tribunal debe examinar la probabilidad de la recurrencia y la probabilidad de que la controversia evada la revisión judicial. Íd.; Cruz v. Administración de Corrección, 164 D.P.R. 341, 349-350 (2005). Este último factor, a su vez, requiere evaluar el tiempo que con toda probabilidad estará disponible para la acción judicial futura. Así, por su propia naturaleza, la duración del daño debe ser inherentemente corta, de modo que la controversia siempre se

tornará académica antes de que se pueda resolver completamente. P.N.P. v. Carrasquillo, supra, pág. 76, en el cual se cita a E. Chemerinsky, Constitutional Law Principles and Policies, 2da ed., Nueva York, Aspen, 2002, págs. 49-50.

En el asunto ante nuestra consideración, aunque hay una probabilidad razonable de que la controversia aquí planteada recurra en otro caso, no la hay respecto a que ésta habrá de evadir la revisión judicial. La mejor prueba de ello es que este caso fue atendido y resuelto por el Tribunal de Primera Instancia, el de Apelaciones y el Tribunal Supremo sin que se hubiese tornado académico durante el trámite judicial.[29] No fue hasta después que se dictó la Opinión de este Tribunal, mientras estaba pendiente una moción de reconsideración, que el juez de instancia determinó que el acusado era inimputable. Debido a esta determinación, cualquier decisión en los méritos en este caso carecerá de consecuencia o efecto concreto alguno entre las partes. No hay duda, pues, de que el caso se tornó académico y estamos impedidos de resolver la controversia en los méritos.

Sin embargo, la mayoría de este Tribunal aplica la excepción de recurrencia para concluir lo contrario y entra a resolver los méritos de la controversia. Al así actuar, revoca la opinión previamente emitida en este caso. Ciertamente, si ponemos a un lado el elemento de

---

[29] Casualmente, el pasado 22 de diciembre de 2009, se presentó ante este Tribunal un recurso de certiorari que planteó la misma controversia de derecho que este caso. Véase: Pueblo v. Castro Rodríguez, CC-2009- 1101.

academicidad, el Tribunal está en todo su derecho de reconsiderar su dictamen original. Sin embargo, la consistencia y estabilidad de nuestras decisiones no deben sacrificarse tan solo por un cambio de parecer institucional. Tenemos que considerar que dislocar la estabilidad y certidumbre que debe tener el derecho tiene consecuencias, no sólo sobre las partes en el litigio, sino sobre los abogados y las abogadas del país, los tribunales de menor jerarquía y los foros administrativos para quienes las decisiones del Tribunal Supremo constituyen precedente y fuente de autoridad. Entiendo, por ello, que el Tribunal debe ser parco al reconsiderar una Opinión y debe hacerlo solo cuando esta sea manifiestamente errónea, de modo que violente la razón y la justicia. Véase: Capestany v. Capestany, 66 D.P.R. 764, 767 (1946); Opinión disidente del Juez Fuster Berlingeri en González v. Merck, 166 D.P.R. 659, 695 (2006).

Se entiende que un precedente es "manifiestamente erróneo" cuando se demuestra que la decisión fue producto de un razonamiento "procesalmente fallido debido a la pobre calidad de los alegatos y argumentos o al inadecuado proceso deliberativo de la corte". Opinión concurrente del Juez Hernández Denton en González v. Merck, supra, pág. 688. El segundo criterio obliga al tribunal a ponderar los efectos jurídicos, morales y sociales de su decisión con el fin de determinar si la norma tiene consecuencias indeseadas. *Íd.,*

pág. 689. Desafortunadamente, la Opinión dictada en reconsideración no atiende estas consideraciones.

En Ruiz v. Alcaide, 155 D.P.R. 492 (2001), resolvimos que mientras el imputado o acusado no sea procesable, **y esté recluido en una institución recibiendo tratamiento**, no le cobija la protección constitucional sobre el término máximo de detención preventiva, ya que no se encuentra sumariado en espera de la celebración del juicio. *Íd., pág. 505-506.* Luego, en Pueblo v. Pagán Medina, 2009 T.S.P.R. 31 (2009), reafirmamos y explicamos dicha norma para aclarar que el tiempo que se puede excluir del computo del término máximo de detención preventiva es aquel durante el cual el imputado estuvo efectivamente en una institución adecuada para su tratamiento.

En la opinión emitida en reconsideración, sin demostrar por qué dichas expresiones son manifiestamente erróneas, el Tribunal establece que se excluirá del término máximo de detención preventiva, el tiempo que transcurra desde la determinación por parte del juez de instancia de "base razonable" para creer que el acusado se encuentra mentalmente incapacitado. El fundamento para esta determinación es que el proceso dictado por la Regla 240 de Procedimiento Criminal no comienza con la vista de procesabilidad sino con la determinación de base razonable del juez de instancia. 34 L.P.R.A. Ap. II. Razona la mayoría que desde ese momento el proceso penal queda suspendido, el Ministerio Público está impedido de procesar al acusado y,

por ende, el acusado no se encuentra pendiente de la celebración de juicio.

Es cierto que el Ministerio Público tiene que interrumpir el proceso criminal desde que el juez de instancia determina que hay base razonable para creer que el imputado no es procesable. En ese momento se tiene que esperar a que el médico del Estado evalúe al paciente y se celebre la vista de procesabilidad. Sin embargo, como explicamos en Pueblo v. Pagán, supra, durante el tiempo entre la determinación de base razonable por el juez de instancia y el traslado a una institución hospitalaria para recibir tratamiento, el acusado o imputado está sumariado en espera de ser procesado criminalmente. Precisamente, la razón por la cual el Estado lo tiene en su custodia es porque se propone celebrarle un juicio. La naturaleza de la custodia cambia cuando el acusado es trasladado a una institución adecuada para su tratamiento. Es entonces que no está sujeto a ser procesado y, por tanto, la privación de su libertad responde a razones distintas a la detención preventiva.

La interpretación que hace la mayoría olvida que el derecho a que el término de detención preventiva no exceda los seis meses es una "garantía al ciudadano contra posibles excesos de la autoridad evitando que la restricción efectiva de la autoridad se convierta en un castigo anticipado". O.E. Resumil, Derecho Procesal Penal, San Juan, Equity Publishing Co., 1990, T. 1, Sec. 6.23, pág. 149. Su

propósito, según surge de las discusiones en la Convención Constituyente, es evitar que el Estado abuse de su poder. Diario de Sesiones de la Convención Constituyente de Puerto Rico, Edición conmemorativa, 2003, págs. 1594-1595. No podemos obviar que es el Estado quien controla la evaluación médica y la celebración de una vista de procesabilidad, así como el traslado de una institución penal a una hospitalaria, si se determina que el imputado no es procesable. En otras palabras, ni el acusado ni su representación legal pueden determinar cuándo se le evaluará ni la fecha del traslado a la institución hospitalaria. Por consiguiente, eliminar este proceso del cálculo del límite constitucional le permite al Estado mantener suspendidos los procedimientos de forma abusiva y privar al acusado de su libertad en una institución carcelaria, por un tiempo irrazonable. También, la interpretación que hace la mayoría permite que el Ministerio Público, cuando lo entienda necesario, extienda el plazo de detención preventiva, aduciendo que hay base razonable para dudar sobre la procesabilidad del acusado y solicitar que se examine por un perito bajo la Regla 240 de Procedimiento Criminal. Estos son precisamente los escenarios en los cuales es necesaria la protección constitucional.

El derecho a no permanecer detenido preventivamente es constitucional e irrenunciable. Sánchez v. González, 78 D.P.R. 849 (1955). Por eso es que en Pueblo v. Pagán, supra, decidimos que la presentación de una moción bajo la Regla

240 de Procedimiento Criminal no puede entenderse como una renuncia al derecho a no permanecer en detención preventiva en exceso de seis meses. Ello porque, al igual que una solicitud de autorización y posposición del juicio, la solicitud y determinación de incapacidad del imputado para ser sometido a juicio requiere el "ejercicio de una discreción judicial sobria, para proteger al acusado en el disfrute de su derecho a un juicio justo, y en sus oportunidades de defensa". Sánchez v. González, supra, págs. 857; Pueblo v. Pagán, supra.

La decisión de suspender la protección constitucional desde que el Tribunal encuentra base razonable para creer que el imputado no es procesable, antes de que sea efectivamente institucionalizado, también violenta el derecho del acusado a la presunción de inocencia. El límite constitucional al poder de custodia del Estado tiene su fundamento en la presunción de inocencia, fundamental en nuestro sistema constitucional. Por eso, como el imputado se presume inocente, no debe ser castigado en anticipación de un delito por el cual no ha sido juzgado. Pueblo v. Martínez Torres, 126 D.P.R. 561 (1990).  Me consterna el que los argumentos de la mayoría excluyan la consideración de este factor, que es "primordial en todo proceso penal: la libertad personal y su principal concomitante, la presunción de inocencia". Pueblo v. Pagán, supra.

Por último, la consecuencia de la determinación de la mayoría es sumamente preocupante pues el imputado tendrá que

escoger entre salvaguardar su derecho constitucional y estatutario a no ser enjuiciado sin la capacidad para defenderse adecuadamente y su libertad personal. Esto sin duda tiene efectos detrimentales sobre el derecho al debido proceso de ley. Así lo reconocimos en Pueblo v. Pagán, supra. Es menester enfatizar que los tribunales deben interpretar los derechos constitucionales de forma amplia a favor de la protección del individuo frente al poder del Estado. Por el contrario, cuando se propone una interpretación que limitaría las libertades personales y ampliaría el poder del Estado, la interpretación debe ser extremadamente rigurosa.

Mis serios reparos a la decisión del Tribunal no son producto de la especulación ni surgen en abstracto. Mas bien son resultado del análisis de los hechos de este caso. Como relata la opinión mayoritaria, aunque la defensa solicitó que se evaluara al señor Pagán Medina bajo la Regla 240 de Procedimiento Criminal el 12 de mayo de 2008, no fue hasta el 20 de agosto de 2008, cien días después, que éste fue declarado no procesable en una vista. Más aun, no fue hasta el 25 de agosto de 2008 que el imputado fue trasladado al Hospital Psiquiátrico Forense. Por consiguiente, luego de haber solicitado la vista de procesabilidad, el imputado estuvo **más de tres meses** internado en una institución penal sin recibir tratamiento. Aunque el foro de instancia decidió que, en efecto, el acusado no era imputable, la realidad es que, de haberlo sido, hubiera estado sujeto a detención

preventiva mucho más allá del límite constitucional, por razones solamente atribuibles al Estado. Es doloroso que este Tribunal, que está llamado a hacer justicia, limite de esta forma los derechos constitucionales a la libertad, a la presunción de inocencia y al debido proceso de ley por meros tecnicismos procesales. Por estas razones, disiento.


Liana Fiol Matta
Jueza Asociada